Next case for argument is Chapman v. Colvin. Mr. Forbes. Randall Forbes May it please the court, my name is Randall Forbes and I represent the Social Security Disability Claimant, Mr. Capman. In this case, we did a lot of arguing about one issue, but I'd like to start by saying after the dust settles from that issue, we still have the issue of the headaches and less important but still important, the issue of the back impairment and how that relates to limitations. So briefly on the headaches, there was a specialist that identified limitations, photophobia, phonophobia, problems with sustained visual focus, and visual acuity. Certainly some of those limitations should have been in the RFC. The ALJ is required to evaluate both severe and non-severe impairments. So that's one issue. The issue with the back pain is this, the ALJ found no exertional restrictions. Now we can argue as to whether the back issues would support a medium restriction, a light restriction, sedentary, whatever, but there should have been some exertional restriction in this case. So I'm happy to argue the issue that we spent most of the time on, but basically both of us go round and round in circles because the Social Security Administration's definition of moderate is under Step 2 or within the Mental Residual Functional Capacity Assessment, and I don't really want to tear down the MRFCA. I like what the guy did, he just didn't follow the argument on the issue on the mental limitations. In that respect, it's just the ALJ didn't go far enough. Finally, there's an inconsistency with this opinion, and it relates to... The ALJ's assessment of his residual functional capacity has the capacity to perform a full range of work with the following non-exertional limitations. Can't engage in complex or detailed tasks, but remains capable of simple routine tasks. Do not require working with the public in no close proximity or cooperation with others. What is wrong with that? He doesn't touch the issue of concentration, persistence, and pace. But it says simple routine tasks. But this court in Yurt and that whole set of jurisprudence that Yurt cites says that that's not enough. And we're dealing with actually the same consultative examiners in Yurt too, who says almost exactly the same thing. The only reason I know that is because Yurt was my client also, but it is what it is. What is the best medical evidence for a disability that the administrative law judge didn't consider? Well, the headache and the neurologist. The judge did consider the back impairment, I just think he considered it incorrectly based on the evidence. But there is no medical expert that offered an opinion that he was disabled under any of the standards for any of these ailments, right? There's no VA, I think he was being treated at the VA on the back, and there's no VA doctor that puts it into limitation type words. But there is a course of treatment that is logically inconsistent with medium or heavy work. So in one sense, you're correct, Your Honor. I've got to work with what I have. Did the administrative law judge and the vocational expert assume that he can do heavy lifting? The judge asked a couple of hypotheticals. One was in the light range. I think one was, I don't recall exactly, but I think it was either non-exertional or heavier. So there was some discussion as to exertional limitations. It's the finding on that that I contest. OK, Your Honor. Yeah, I'll reserve the rest, Your Honor. Thank you. Mr. Truitt? May it please the Court, I'm Eric Truitt on behalf of the Commissioner. As it was pointed out in the questioning of Mr. Forbes, there's no medical opinion indicating that Mr. Catman is more limited than the ALJ found. You have to keep your voice up. Sorry. There's no medical opinion indicating that Mr. Catman is disabled or even more limited than the ALJ found. With respect to his mental impairments, the ALJ, the RFC assessment is almost verbatim what you find in the Part 3 of the form that was completed by the State Agency Psychological Consultant. That also was very consistent with the opinion provided by the consultative psychological examiner. So you have two doctors supporting the ALJ's findings with respect to Mr. Catman's mental impairments. With respect to Mr. Catman's physical impairments, the ALJ's written decision addresses both pain. With respect to headaches, the ALJ pointed out that Mr. Catman testified that his headaches now were less severe than they were when he served in the Navy, which I believe was between 1987 and 1990. So the ALJ reasonably concluded that if he was able to work for nearly two decades with these headaches, they likely were not going to limit his ability to do the jobs identified by the vocational expert. The ALJ also found in the written decision that there were very limited complaints of headaches in Mr. Catman's medical records. There were normal neurological findings. He complained of headaches only when he read too much, and he also testified at the hearing that he was prescribed medication for headaches, but no longer testified that he no longer had evidence. His ability to work with worse headaches in the past, limited objective findings, limited treatment, and few even subjective complaints in his medical records, the combination of those is an adequate justification to find that he didn't have any exertional or non-exertional limitations from his headaches. Turning to his back pain, again, this is another longstanding injury that he claimed happened in the Navy. Mr. Catman maintained that he was disabled since 2006, yet there was years where he had no evidence of treatment for his back pain. At least during part of the time that he alleges he was disabled, he was riding horses and fishing. He was in prison during a period of time in which he claims he was disabled. He didn't have any complaints of back pain while he was in prison. When he was released from prison, April 2011 or so, that's around the time that he applied for Veterans Disability Benefits as well as Social Security Disability Benefits. At that time, he went to the VA, and they gave him a TENS unit, like an electrical stimulator for his back pain. But they're very modest clinical findings, and they didn't think it necessary to order an X-ray, an MRI, or any other kind of imaging that you typically see when someone is alleging significant back pain. Do you still have that? Does he still have the TENS unit? The electric interrupter that... I did not see anything in the record indicating that they took it away. I believe the way that it came about is he told the VA physician that he had previously used his father's TENS unit, and it helped him, and so they set it up so he could get his own TENS unit. But I'm not aware... I don't recall anything in the record where he was required to give the unit back. Let me ask you, the figures given by the vocational expert about the jobs that he can do, the 2,000... So, for the first job, store, labor, or something, 2,000 jobs in Indiana, 100,000 in the United States. So, India has exactly average, right? 50 states. If each one has 2,000, that adds up to 100,000. That's suspiciously convenient that Indiana should have exactly one-fiftieth of all the store laborers in the United States. Where does that come from? The VE's qualifications are in the record. He worked as a vocational consultant. He provided labor market information for a special needs person. How did he get the number 2,000 jobs in Indiana, 100,000 in the United States? Mr. Capman's counsel did not ask him about the information. Yeah, I'm asking you. I don't know, because unlike in much civil litigation, they don't prepare... Did the administrative law judge ask him where he gets these suspiciously round numbers? Well, first of all, if you look at the other numbers, for example, the hand packager, there's 2,000 in Indiana and 150,000 nationwide. The hand packager at the light levels, 1,500 in Indiana and 100,000 nationwide. So, it's not as if there's perfect symmetry between all of the jobs. But going back to the... The hand packager's 150,000 in the country. Yes. As many as 2,500 in Indiana. That would be 1 in 60 was in Indiana. So, where did he get those figures from? Well, again, what happens at the hearing, the expert doesn't prepare a report. And so, under this court's holdings, the claimant has an opportunity to demand that the vocational expert provide the underlying information. But under both then the ALJ is free to accept the bottom line conclusion. And that's consistent with the Supreme Court's holding in Richardson v. Perales. You can use... In that case, you could use medical reports from people that didn't testify at the hearing because the claimant had the opportunity to subpoena those medical experts and cross-examine them about the basis for their opinions. And so, again, if Mr. Capman's attorney had asked for that information under this court's jurisprudence, the vocational expert would have been obligated to provide that information. Is there some federal agency that provides this kind of statistical information? There is statistical information provided by the Department of Labor. There is also private sources of information, such as the Occupational Employment Quarterly, I believe it is. Mr. Ve's resume indicated that he did his own work on functional job analyses and essential job functions. And this, you know... The problem, which we've identified in previous cases, there are no, there do not appear to be any government figures for narrow breakdowns of jobs. Again, this is, you know, this is something that's appropriately addressed at the hearing level, where the vocational expert has an opportunity... At what level, I'm sorry? At the hearing level, the administrative hearing level. So you're saying that if the applicant asks for the basis of these job estimates, then the vocational expert would have to provide some... Yes, and they're also free to challenge the methodology used by the vocational expert at the hearing. But absent, you know, we can't say definitively how the vocational expert arrived at these numbers because the claimant didn't ask about that. Under agency policy, the ALJ has an obligation to ask whether the vocational expert's testimony is consistent with the description of the jobs in the DOT, but there's no independent requirement that the ALJ ask about the methodology used to derive the job figures. Is that it? One last thing. With respect to the mental impairments, if you look, you know, there's an extensive legal argument about whether or not the ALJ needed to credit Section 1 of the form that the psychological consultant completed. But it's not even necessary to reach that legal question because if you look at the boxes that were checked, the RFC finding addresses all of those boxes. He had moderate difficulties with understanding and remembering detailed instructions. The work that he was assigned was simple and routine tasks. He had difficulty carrying out detailed instructions. That's the same thing. He had difficulty working in coordination or proximity with others. The RFC finding addressed that. He had difficulty interacting with the general public. He had no work with public in the RFC, and so on and so forth. So regardless of the legal issue, you know, on the facts here, the RFC finding adequately addresses all of the check boxes. Okay. Thank you, Mr. Truitt. Mr. Forbes? The RFC does not address all the check boxes, but I'm not going to go down the list. It's in the brief. Just for information, the reason that we don't grill the vocational experts extensively in every hearing is because those of us who do hundreds of hearings a year, we already know roughly the range of acceptable testimony on store laborers in Indiana, and we know it's not going to be a significant number no matter how much cross-examination we do. So it's not an issue that normally we can win. Again, just... Well, but there is a problem of where those jobs are located. I mean, you can have somebody in a rural area who, to obtain one of those jobs, would have to move, right? Yes and no. Present Social Security regulations essentially have tried to overturn this court's jurisprudence. And so right now the regions that are talked about are the states and maybe broader regions, but no narrower than the state. That's not very helpful. No. I've been asking how many economic regions are in Indiana just so I can start dividing up the figures. Well, many of them say a region, state, and nation, where region is a town or a county or something of that sort. Right, right. Yeah. That's more realistic if you're dealing with people who are not in a position to relocate, especially the other end of the country. I expect that perhaps in a year or so maybe we'll be back here with that issue. Who knows? I would like you to look real carefully, as I know you have, at the York case and its similarities and distinctions from this case because I think that it's controlling on the concentration, persistence, and pace issue. Thank you, Your Honor. Okay. Thank you very much to both counsel.